# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

February 10, 2009

Robert F. O'Brien
Steven J. Bushinsky
O'Brien, Belland & Bushinsky, LLC
Cherry Hill, New Jersey 08003

    (*Attorney for Plaintiffs*)

Michael T. Bissinger
Day Pitney, LLP
P.O. Box 1945
Morristown, New Jersey 07962

    (*Attorney for Defendants*)

    **RE:**    **Utility Workers Union of America, Local 601,** *et al.* **v. Public Service Electric and Gas Company,** *et al.*
           **Civ. No. 07-2378 (WJM)**

Dear Counsel:

    This matter comes before the Court on the parties' cross-motions for summary judgment. There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**, Plaintiffs' motion is **DENIED**, and Plaintiffs' complaint therefore is **DISMISSED** with prejudice.

## I.     BACKGROUND

The pertinent facts of this case are not in dispute. Defendant Public Service Electric and Gas Company ("PSE&G") is a utility company that distributes gas and electric service throughout the state of New Jersey. Plaintiff Utility Worker's Union of America, Local 601 (the "Union"), is a labor union that represents PSE&G employees. Plaintiffs Valerie King, Kevin Freeland, Richard Guida, Mark Bellinger, and Elizabeth Avila (collectively "Plaintiff-employees") are PSE&G employees and members of the bargaining unit represented by the Union.

The Union and PSE&G are parties to a Collective Bargaining Agreement[1] ("CBA"), which establishes the terms and conditions of Plaintiff-employees' employment. Article XVII of the CBA states that: "During the period of the Agreement, [PSE&G] shall not suspend its ... Medical Insurance Plan and Pension Plan, or diminish any of the benefits provided under said plans ..." (Exs. A, B, C to Pl.'s Statement of Material Facts) ("Pl's SMF").

Consistent with this provision of the CBA, PSE&G offers medical and dental benefits to approximately 10,000 employees. (Certification of Charles L. Miracola ¶ 2) ("Miracola Cert."). The Public Service Electric and Gas Company Benefits 2000 Health and Welfare Benefits Plan for Represented Employees (the "Plan") is one of the medical and dental benefits plans offered by PSE&G.

A packet of information about the Plan, including the summary plan description ("SPD") was mailed to those Union employees eligible to enroll. (Miracola Cert. ¶ 4, Pl.'s SMF Ex. D, E, F). As the name implies, the SPD provided details to the eligible employees about enrollment in and the benefits available under the Plan.

At issue now between the parties is one aspect of the Plan – the availability of the so-called "waiver credit." As explained in the SPD, eligible employees could receive a cash credit for waiving coverage under the Plan, provided that they had coverage elsewhere and demonstrated proof of that coverage to PSE&G. Specifically, the SPD for July 1, 2001 provided that:
> You may choose the No Coverage option [for medical and dental benefits] and waive coverage as long as you have coverage elsewhere (for example, through your spouse's plan). If you choose No Coverage, you will receive a credit. ... To choose No Coverage, you will be required to provide

---

[1] The current CBA between the Union and PSE&G became effective on May 1, 2005 and will remain in effect until April 30, 2011. (Pl.'s SMF Ex. C). Previously, the Union and PSE&G were parties to a CBA effective from May 1, 1996 through April 30, 2002 and then to a CBA effective from May 1, 2002 through April 30, 2005. (Pl.'s SMF Exs. A, B).

documentation to Benefits 2000 stating that you have coverage elsewhere. Include the name of the plan under which you are covered and the name of the employer providing the plan.

(P's SMF ¶ 15, Miracola Cert. Ex. B).[2] This "waiver credit" would have amounted to approximately $60 per month – $50 for waiving medical coverage and $10 for waiving dental coverage. (D's Br. in Supp. of Summ. J. at 1, 8).

Despite not receiving benefits from PSE&G, Plaintiff-employees were not paid this "waiver credit." In October 2003, Plaintiff King contacted PSE&G's plan manager to ask why she was not receiving the credit. (Bissinger Cert. Ex. L at 61: 20-62: 2). King then submitted a letter to the plan administrator in January 2004 requesting reimbursement for the "waiver credits" that she had not received for the years 2001 though 2003. (Bissinger Cert. Ex. M). King's claim was denied, which she appealed, consistent with the grievance procedures outlined in the SPD. (Miracola Cert. ¶¶61, 62). This appeal was denied by PSE&G's Employee Benefits Committee. (Miracola Cert. ¶ 64). The matter then went to arbitration, where it was determined that the matter was not arbitrable. (Pl.'s SMF ¶¶ 71, 74). As such, the arbitrator denied King's grievance.

Following the denial of King's grievance, the Union, together with Plaintiff-employees, brought the instant action.[3] Now, both parties have filed motions for summary judgment.

## II.   ANALYSIS

Before the Court now are the parties' cross-motions for summary judgment. At issue are the three claims raised by Plaintiffs: 1) an Employee Retirement Income Security Act of 1974 ("ERISA") claim based on Defendant's alleged wrongful denial of benefits, i.e. the "waiver credit" (Count Two of the complaint); 2) a claim for breach of fiduciary duty brought under ERISA (Count Three); and, 3) a claim for breach of the Collective Bargaining Agreement brought under the Labor-Management Relations Act ("LMRA") (Count One). Both cross-motions address these three claims.

---

[2] The SPD for December 2004 contains very similar language, describing the credit for waiving medical benefits:
> You may choose the "No Coverage" option and waive coverage as long as you have coverage elsewhere (for example, through your spouses [sic] plan). If you choose No Coverage, you will receive a $50 monthly credit, as taxable cash back in your pay. To choose No Coverage, you will be required to confirm to Benefits Express that you have coverage elsewhere.   (P's SMF ¶ 16).

[3] While King filed a grievance requesting payment of the waiver credit, Plaintiffs Guida, Freeland, Bellinger, and Avila did not do so. (Bissinger Cert. Exs. B at 65:10-17, D at 32:10-23, E at 53:17-24, & F at 63:14-20).

### A. Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected, the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. *See Iberia Foods Corp. v. Romeo Jr.*, 150 F.3d 298, 302 (3d Cir. 1998) (citing *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 145-46 (3d Cir. 1988)).

**B.     Plaintiffs' ERISA Claim**

Plaintiffs bring a claim under 29 U.S.C. § 1132(a)(1)(B),[4] alleging that PSE&G wrongfully denied payment of the medical and dental monthly waiver credits due to them under the Plan. Defendants counter this by arguing that the credits were not "due" to Plaintiffs, since Plaintiffs failed to follow the steps outlined in the SPD and other Plan documents required for receipt of the credit. Review of the cross-motions on this point reveals no genuine issue of material fact.

*i.     Exhaustion of Remedies*

As an initial matter, Defendants raise the affirmative defense of exhaustion of remedies. The Third Circuit has long held that "[e]xcept in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990)).

While the SPD for the instant plan provides for an appeals procedure to be used by Plan participants who feel that they have been wrongfully denied a benefit, *see* Miracola Cert. Ex. B at 14-15, four of the five Plaintiff-employees – Guida, Freeland, Avila, and Bellinger – failed to file a grievance or otherwise pursue their claims using the Plan's administrative procedures.[5] (Bissinger Cert. Exs. B at 65:10-17, D at 32:10-23, E at 53:17-24, & F at 63:14-20).

Although the exhaustion requirement is strictly enforced, the Third Circuit has recognized an exception where a plaintiff's resort to administrative remedies would be futile. *Harrow*, 279 F.3d at 249. Plaintiffs contend that this futility exception is applicable here. Since Plaintiff King did not prevail in her arbitration proceedings against PSE&G, Plaintiffs argue that "it was clear" to Guida, Freeland, Avila, and Bellinger "that any action taken by them would have been futile." (Pl.'s Br. in Opp'n to Summ. J. at 24).

This futility argument falls far short of the "clear and positive showing of futility" required by the Third Circuit in *Harrow*. 279 F.3d at 249. In *Harrow*, the court identified five factors to weigh in determining whether to excuse exhaustion on futility grounds:

---

[4] 29 U.S.C. § 1132(a)(1)(B) states: "A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[5] The fifth Plaintiff-employee, Valerie King, filed a grievance and submitted an appeal. (Defs.' Statement of Material Facts ¶¶ 60-64, Pl.'s Br. in Opp'n to Summ. J. at 23-24).

"(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." *Id.* at 250.

None of these factors is present here. Guida, Freeland, Avila, and Bellinger did not diligently pursue administrative relief. In fact, they did not pursue any kind of relief, outside of the instant action. There was no "fixed policy" at PSE&G to deny the payment of the waiver credit. In fact, between 1997 and 2002, approximately 20 PSE&G employees received the "waiver credit." (Miracola Cert. ¶ 16). Further, there has been no showing that PSE&G failed to comply with its own administrative procedures. To the contrary, Plaintiffs have explained in detail the steps that Plaintiff-employee King took to bring her grievance through the proper channels at PSE&G and ultimately to arbitration. (Pl.'s Br. in Opp. to Summ. J. at 7).

Plaintiffs simply cite the fact that Plaintiff King did not prevail in her arbitration. That one Plaintiff's grievance was unsuccessful cannot be held on its own to demonstrate that any subsequent grievance by another employee – even a similarly-situated employee – would be futile.[6]

Plaintiff-employees Guida, Freeland, Avila, and Bellinger have failed to demonstrate the requisite "clear and positive showing of futility." As such, summary judgment is granted to Defendants as to the ERISA claim advanced by Plaintiff-employees Guida, Freeland, Avila, and Bellinger for failure to exhaust administrative remedies.

### ii. Merits of the ERISA Claim

Even if administrative remedies had been exhausted, Defendants would still be entitled to summary judgment as to the ERISA claim advanced by all Plaintiffs. The undisputed facts demonstrate that Plaintiffs did not receive the waiver credit because they did not take the steps necessary to qualify for it.

---

[6] This is particularly true where, as here, these four Plaintiff-employees have not demonstrated that they were aware of Plaintiff King's grievance proceedings and their outcome prior to bring suit.

      a.      <u>Standard of Review</u>

As this case involves a review of a denial of benefits under ERISA, the Court first undertakes a consideration of the relevant standard of review. Courts customarily review an ERISA benefits decision de novo. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989). If, however, the employee benefits plan grants discretionary authority to the plan administrator in determining eligibility benefits, the denial of such benefits is reviewed under an arbitrary and capricious standard. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 390 (3d Cir. 2000) (interpreting *Firestone*). If the benefit plan gives discretion to an administrator operating under a conflict of interest, courts must modify the traditional arbitrary and capricious standard to account for that conflict. *Id.* This modified arbitrary and capricious review is a sliding scale review that is a "range, not a point . . . [ ] more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion." *Pinto*, 214 F.3d at 392-93.

The contours of this sliding scale review were laid out in *Post v. Hartford Ins. Co.*, 501 F.3d 154 (3d Cir. 2007). Post directs courts to consider any evidence that the administrator acted from an improper motive, including evidence of structural conflicts of interest or evidence of bias based on procedural factors, and heighten its scrutiny as appropriate. *Id.* at 161-62. Then, courts are to review "the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it." *Id.* at 162. If the administrator properly exercised its discretion, courts must affirm the decision. *Id.* If the administrator's decision was an abuse of discretion, the court steps "into the shoes of the administrator and rules on the merits itself." *Id.*

Here, the Plan granted discretionary authority to the PSE&G Employee Benefits Committee to interpret the terms of the Plan and to determine eligibility for benefits. (Miracola Cert. Ex. M). As such, the Court will apply an arbitrary and capricious standard of review.

Plaintiffs argue that there were "extensive" structural conflicts of interest, meriting a significantly heightened standard of review. (Pl.'s Br. in Supp. of Summ. J. at 31). These structural conflicts allegedly derived from the cash savings realized by PSE&G through non-payment of the credits. (Pl.'s Br. in Supp. of Summ. J. at 31-32). Plaintiffs argue that it was in PSE&G's interest not to pay the credit; therefore, PSE&G's interests were not aligned with its employees. Even assuming *arguendo* that this constitutes a structural conflict, it does not alter the standard of review significantly. As the Third Circuit noted in *Post*, "we have not reported a case in which structural factors alone warranted anything more than moderately heightening our review." *Post*, 501 F.3d at 164.

7

In an attempt to demonstrate a procedural conflict, Plaintiffs allege that PSE&G's non-payment of the waiver credit was based on a subjective policy created solely by Defendants. (Pl.'s Br. in Supp. of Summ. J. at 32-33). Further, Plaintiffs argue that PSE&G ignored any contrary evidence submitted by Plaintiffs. There is nothing in the record to support these allegations. Absent any record evidence to support these allegations, the Court cannot find that a procedural conflict existed to merit a standard of review greater than the moderately-heightened arbitrary and capricious standard discussed above.

    b. <u>Application of Standard of Review to Non-Payment of Credits</u>

Under ERISA, a summary plan description must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

In reviewing a plan administrator's interpretation of an ERISA plan – here, the non-payment of the waiver credits – the Court must first examine whether the terms of the SPD are ambiguous. *Bill Gray Enterprises, Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 219 (3d Cir. 2001). Actions reasonably consistent with unambiguous plan language are not arbitrary under ERISA. *Id.* at 218.

Whether terms in an ERISA Plan document are ambiguous is a question of law. In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of the document. *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir.1995) ("The written terms of the plan documents control...."). A term is "ambiguous if it is subject to reasonable alternative interpretations." *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir.1991).

The language of the SPD is unambiguous. As noted above, the January 1996, July 2001 and December 2004 SPDs explain that to receive the "waiver credit" from PSE&G, Plaintiff-employees were required to "choose No Coverage" and submit documentation of alternate coverage. (Pl.'s SMF Ex. D at 31, 40, Ex. E at 9, 32, and Ex. F at 6). There were two defined steps to this process: (1) choosing to waive coverage by selecting the coverage option "No Coverage" and (2) submitting documentation to PSE&G to substantiate that medical and/or dental benefits were being received from another source. The word "choose" is commonly understood to entail an affirmative act of selection. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 200 (10th ed. 2002). The language

indicates that Plaintiffs were required to select the No Coverage option.[7] Simply failing to enroll was not sufficient. Further, Plaintiffs were required to have other benefits coverage and present evidence of that coverage to receive the credit.

Plaintiffs argue that the SPDs were vague and ambiguous, in part because of a provision on page four of the July 2001 SPD. This provision states: "If you do not enroll within 31 days, you and your eligible dependents will not have any coverage, and you must wait until the next year's annual enrollment to elect coverage." (Miracola Cert. Ex. B at 4). Plaintiffs claim that this provision renders the clear explanation of how to receive the credit somehow unclear. The Court disagrees. This page four provision simply states that if you do not enroll in the Plan, you will not be covered by the Plan. This is axiomatic. Not being covered by the Plan through inaction is clearly different than affirmatively electing the No Coverage option explained on pages 31 and 40 of the July 2001 SPD.[8] (Miracola Cert. Ex. B at 31, 40).

The actions taken by PSE&G with regard to Plaintiffs – i.e. the non-payment of the credits – were consistent with this unambiguous SPD language. None of the Plaintiffs complied with the requirements for the credit. Guida and Freeland did not elect to waive coverage by selecting the "No Coverage" option. (Bissinger Cert. Ex. B at 45: 24-46:6, Ex. D at 17: 3-9, Ex. E). Avila did not provide any specific documentation regarding the alternate coverage she received through her husband's employer to Defendants. (Bissinger Cert. Ex. F at 42: 5-8). King alleges that she sent in a letter to an unspecified entity[9] indicating that she did not want coverage under the plan; however, King was not aware that she was required to submit documentation demonstrating coverage under her husband's medical benefits. (Bissinger Cert. Ex. L at 41:16-19). Likewise, Bellinger did

---

[7] This requirement was clearly indicated in the other benefits documents attached by Plaintiffs to their moving brief, including "Benefits 2000: An Overview." (Pl.'s SMF ¶ 20, Ex. F). In this document, employees are told that the "No Coverage" option must be "selected" and that coverage must be "declined" in order to receive cash back as a waiver credit. Further, employees are informed that they are required to provide proof of alternate coverage to the company. See, e.g. Pl.'s SMF Ex. F at 1246-47. In addition, the benefits orientation materials referred to by Plaintiffs in paragraphs 21 and 22 of their Statement of Material Facts indicates that the "No Coverage" option must be selected to receive the cash back credit.

[8] The fact that PSE&G modified this policy in the December 2004 SPD does not render the July 2001 SPD vague and ambiguous. In the December 2004 SPD, PSE&G announced that those eligible employees who did not enroll in the benefits plan within 31 days after hire would be assigned benefits automatically. (Pl.'s Ex. E at 6). The explanation of this policy in the December 2004 SPD is clear and unambiguous. Plaintiffs have not pointed to any law stating that a change in coverage policy, on its own, renders past plan documents ambiguous – particularly where, as here, the policies are clearly explained.

[9] It is unclear from the record whether this letter went to PSE&G or some other unknown entity.

not know what he had to do to qualify for the waiver credit. (Bissinger Cert. Ex. E at 42: 24-43: 144: 5-19). As such, Defendants' non-payment of the credit was consistent with the unambiguous plan language, since Plaintiff-employees did not fulfill the necessary requirements to receive the credit. Therefore, PSE&G's actions were not arbitrary. The Court grants summary judgment in favor of PSE&G on Count Two of the Complaint.[10]

### B.     ERISA Breach of Fiduciary Duty Claim

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA. 29 U.S.C. § 1104(a)(1)(B). Specifically, Plaintiffs allege that Defendants breached this duty through their failure to notify Plaintiffs to affirmatively select the "No Coverage" option by going online and completing an opt-out request. Again, review of the cross-motions reveals no material facts in dispute on this claim.

#### i.    *Exhaustion of Remedies*

As a threshold matter, this claim is subject to the exhaustion requirement discussed *supra* at Point II.B.ii. Plaintiffs' breach of fiduciary duty claim is merely a recasting of their claim for benefits. The relief sought is identical, as is the violation alleged – i.e. that the SPD was vague and ambiguous in explaining how to select No Coverage such that Plaintiffs were wrongfully denied the waiver credit. Under *Harrow*, "[w]hen the facts alleged do not present a breach of fiduciary duty claim that is independent of a claim for benefits, the exhaustion doctrine still applies." *Harrow*, 279 F.3d at 253. Here, Plaintiff-employees Guida, Freeland, Avila, and Bellinger did not meet the exhaustion requirement and their argument for the futility exception is rejected for the reasons stated, *supra*. As such, summary judgment is granted in favor of the Defendants as to these four Plaintiffs with regard to Count Three of the complaint.

#### ii.   *Substantive Merits of the Breach of Fiduciary Duty Claim*

Even if administrative remedies had been exhausted, Defendants would still be entitled to summary judgment on the breach of fiduciary duty claim as to all Plaintiffs, since the claim fails on its substantive merits.

To succeed on a breach of fiduciary duty claim, a plaintiff is required to establish the following elements: (1) the defendant's status as an ERISA fiduciary acting as a

---

[10] Defendants argue in addition that Plaintiffs Avila and Freeland were time-barred from bring this claim. Since the Court grants Defendants summary judgment on other bases, it is not necessary to reach the statute of limitations argument.

fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001). Here, Plaintiffs have failed to establish elements two and four – a misrepresentation by PSE&G and detrimental reliance by the Plaintiffs.

First, Plaintiffs have failed to demonstrate any misrepresentations by Defendants. As discussed above, the SPDs were clear and unambiguous. Read in its entirety, the July 2001 SPD informed PSE&G employees of the steps necessary to receive the waiver credit, *see* Point II.B. If Plaintiffs indeed were confused about how to enroll, the SPD clearly and unambiguously lists "additional resources," including a website and a hotline to call with questions.[11] (Ex. D to Pl.'s SMF at 22). Plaintiffs have demonstrated no affirmative misrepresentations by PSE&G and have failed to demonstrate that the SPD was misleading. On the contrary, Defendants have demonstrated the unambiguous language in the SPD informed Plaintiffs how to receive the waiver credit.

Even assuming that there had been a misrepresentation, Plaintiffs have failed to demonstrate detrimental reliance. Most glaringly, none of the Plaintiffs can recall whether they read the SPD waiver credit provisions. (Bissinger Cert. Ex. B at 52: 52: 8-18, Ex. D at 17: 14-17, Ex. E at 41: 15-20, Ex. F at 32: 21-33: 1, Ex. L at 89: 22-91: 10). It escapes the Court how Plaintiffs could have relied upon a document that they are not even certain that they read. Plaintiffs have offered nothing in the record to refute this or establish that the Plaintiffs read or relied on the SPD. As such, Defendants are entitled to summary judgment on Count Three of the Complaint, the breach of fiduciary duty claim.

### C.    LMRA Claim

Plaintiffs further bring suit under the Labor-Management Relations Act, alleging that Defendants' non-payment of the credits violated the CBA by diminishing the benefits available to them. 29 U.S.C. § 185(a). Since the non-payment of the waiver credit was caused by Plaintiffs' failure to follow the steps laid out in the SPD, the Court finds that PSE&G did not diminish a benefit.

As the CBA is an agreement between PSE&G and the Union, its meaning should be construed using contract principles. *See Teamsters Indus. Employees Welfare Fund v.*

---

[11] Likewise, the January 1996 SPD states that: "Questions concerned your participation should be discussed with your Human Resources representative," and the December 2004 SPD informed employees that they could contact Benefits Express with any questions about the medical benefits plan. (Pl.'s SMF Ex. F at 1, Ex. E at 17).

*Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir.1993) (construing the terms of a collective bargaining agreement and explaining that the "traditional rules of contract interpretation apply when not inconsistent with federal labor law"). Where the terms of a contract are clear and unambiguous, it is proper for the court to determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001).

Looking first at the plain language of the CBA, Article XVII states that "[d]uring the period of the Agreement, the Company shall not ... diminish any of the benefits provided under said plans..." (Exs. A, B, C to Pl.'s Statement of Material Facts) ("Pl's SMF"). The terms of this provision are clear and unambiguous.[12] As conventionally understood, to "diminish" means "to make less." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 325 (10th ed. 2002). Therefore, PSE&G was barred by this provision from making less or reducing the benefits available to Plaintiffs.

Here, the waiver credit was at all times available to Plaintiffs. After all, twenty of their coworkers received the credit. The problem was that Plaintiffs did not perform the steps necessary to receive the credit themselves. Plaintiffs have not demonstrated diminishment by PSE&G; instead, they have shown inaction on their part.

To get around this, Plaintiffs argue the Union bargained for the waiver credit in drafting Article XVII and that non-payment violated the Union's expectations. First, there is no evidence in the record to demonstrate that the Union specifically bargained for the "waiver credit." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990) ("Courts of Appeals have reiterated that 'conclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact."). In addition, there is no evidence in the record to support Plaintiffs' claims of subterfuge by PSE&G or intent to frustrate the purpose of the CBA. These allegations in Plaintiffs' brief are not sufficient to establish facts for the purpose of summary judgment. As there is no issue of material fact between the parties, the Court finds that Defendants did not violate the terms of the CBA. Accordingly, Defendants are entitled to summary judgment as to Count One of the complaint.

---

[12] As such, Plaintiffs' argument to apply *contra proferentem* is inapposite. "Under that rule, if, after applying the normal principles of contractual construction, an insurance contract is fairly susceptible of two different interpretations, … the interpretation that is the most favorable to the insured will be adopted." *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257 (3d Cir. 1993).

**III.    CONCLUSION**

      For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** and Plaintiffs' motion for summary judgment is **DENIED**.

                                      /s/ William J. Martini  
                                      **WILLIAM J. MARTINI, U.S.D.J.**